KEEMO DOWE,

> Petitioner,

v.                                                    Case No. 3:16-cv-162-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

> Respondents.

---

## ORDER

### I. Status

Petitioner Keemo Dowe, an inmate of the Florida penal system, initiated this action on February 15, 2016,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1; Petition). In the Petition, Dowe challenges a 2008 state court (Duval County, Florida) judgment of conviction for trafficking in 3,4-methylenedioxymethamphetamine (MDMA). Dowe raises three grounds for relief. See Doc. 1 at 3-11.[2] Respondents have submitted a memorandum in opposition to the Petition. See Answer to Petition for Writ of Habeas Corpus (Resp.; Doc. 10) with exhibits (Resp. Ex.). Dowe opted not to submit a brief in reply. See Docs. 11; 12. This case is ripe for review.

### II. Procedural History

On October 31, 2008, by way of amended Information, the State of Florida (State) charged Dowe with possession of more than twenty grams of cannabis (count one),

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

possession of MDMA (count two), and trafficking in MDMA (count three). Resp. Ex. A at 21-22. On February 24, 2009, Dowe, with the assistance of counsel, moved to sever count one from counts two and three. Id. at 38-39. Ultimately, Dowe proceeded to a trial only on count three, Resp. Ex. B at 3, at the conclusion of which, on March 6, 2009, the jury found him guilty as charged. Resp. Ex. A at 71. On April 6, 2009, the circuit court sentenced Dowe to a term of incarceration of ten years in prison, with a three-year minimum mandatory sentence. Id. at 94-99.

On direct appeal, Dowe, with the assistance of counsel, filed an initial brief raising the following issues: the circuit court erred when it denied his motion for judgment of acquittal (issue one); and the circuit court erred by not allowing Dowe to use a peremptory strike on Mr. Matricardi (issue two). Resp. Ex. D at 14-24. The State filed an answer brief. Resp. Ex. E. On January 15, 2010, Florida's First District Court of Appeal (First DCA) per curiam affirmed Dowe's conviction and sentence without a written opinion. Resp. Ex. F. The First DCA issued its Mandate on February 2, 2010. Resp. Ex. G.

On January 10, 2011, Dowe, through counsel, filed a Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion), Resp. Ex. H at 1-11, and an Amended Motion for Postconviction Relief (Amended Rule 3.850 Motion) on July 2, 2013, id. at 12-22. Later, on June 18, 2015, Dowe filed a pro se Motion for Leave to Amend, in which he represented that his postconviction counsel had withdrawn and that Dowe wanted to amend his Amended Rule 3.850 Motion to "[reduce] the claims he had raised to just one." Id. at 23. On the same day, Dowe filed another Rule 3.850 Motion (Second Amended Rule 3.850 Motion), which raised the following ground for relief: the circuit court lacked subject matter jurisdiction. Resp. Ex. P. On November

10, 2015, the circuit court determined Dowe had abandoned his Rule 3.850 Motion and Amended Rule 3.850 Motion and dismissed those motions. Resp. Ex. H at 26-31. In the same order, the circuit court denied Dowe's Second Amended Rule 3.850 Motion on the merits. Id. On February 10, 2016, the First DCA per curiam affirmed the circuit court's denial of Dowe's Second Amended Rule 3.850 Motion, Resp. Ex. T, and issued its Mandate on March 8, 2016. Resp. Ex. S.

On May 7, 2015, Dowe filed a petition for writ of habeas corpus with the First DCA, raising the same argument he made in his Second Amended Rule 3.850 Motion. Resp. Ex. U. The First DCA per curiam dismissed the petition on May 27, 2015, citing to Baker v. State, 878 So. 2d 1236 (Fla. 2004). Resp. Ex. V.

### III. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made

> retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000). When a state postconviction motion is untimely under state law, it is not properly filed for purposes of section 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005). The Eleventh Circuit has explained:

> In short, when a state court unambiguously rules that a post-conviction petition is untimely under state law, we must respect that ruling and conclude that the petition was not "properly filed" for the purposes of § 2244(d)(2), regardless of whether the state court also reached the merits of one of the claims.

Sweet v. Sec'y, Dep't of Corr., 467 F.3d 1311, 1318 (11th Cir. 2006) (emphasis added); see also Ousley v. Sec'y Dep't of Corr., 269 F. App'x 884, 886 (11th Cir. 2008) (noting that "we have only applied [the Sweet] holding in cases where the state court made an 'unambiguous finding' that the petitioner's state post-conviction motion was untimely.").

Respondents contend the instant Petition is untimely because Dowe abandoned his two timely Rule 3.850 Motions in his June 18, 2015 Motion for Leave to Amend, and the circuit court denied as untimely his Second Amended Rule 3.850 Motion. Doc. 10 at 10-11. According to Respondents, Dowe's properly filed Rule 3.850 Motions no longer

tolled the statute of limitations period as of June 18, 2015, when he abandoned them. Id. Additionally, Respondents assert that the Second Amended Rule 3.850 Motion was not "properly filed" for purposes of section 2244(d)(2) because the circuit ruled it was untimely. Id. Respondents maintain that without the Second Amended Rule 3.850 Motion acting as a tolling motion, the one-year limitations period for Dowe to pursue habeas relief expired prior to the filing of the instant Petition. Id.

In its order denying Dowe's Second Amended Rule 3.850 Motion, the circuit court stated the following:

> This Court finds Defendant's Second Amended Motion is procedurally barred as untimely, in that he filed it more than two years after his conviction became final. See Fla. R. Crim. P. 3.850(b) (2015); Huff v. State, 569 So. 2d 1247, 1250 (Fla. 1990). However, Defendant has alleged lack of subject-matter jurisdiction in his Second Amended Motion and in his Motion for Leave to Amend. Therefore, out of an abundance of caution, this Court addresses Defendant's instant Motions. See Edwards v. State, 128 So. 3d 134, 136 (Fla. 1st DCA 2013) (citing Waggy v. State, 935 So. 2d 571, 573 (Fla. 1st DCA 2006)) (stating "[n]ormally, a claim that the trial court lacked subject matter jurisdiction can be raised at any time.").
>
> In view of the foregoing, to the extent it appears Defendant seeks to abandon the two motions counsel previously filed, this Court finds it appropriate to grant Defendant the relief he seeks in his Motion for Leave to Amend. As such, this Court dismisses Defendant's Motion and Amended Motion, and addresses the merits of only Defendant's Second Amended Motion.

Resp. Ex. H at 28 (record citations omitted and emphasis added). The circuit court then went on to deny the claim raised in Dowe's Second Amended Rule 3.850 Motion on the merits. Id. at 28-30.

While the circuit court initially found the motion untimely, it nevertheless determined that it would address the merits because Dowe's allegation that the circuit

court lacked subject matter jurisdiction constituted an exception to Rule 3.850's two-year time limitation. Id. at 28. As such, the Court concludes the circuit court's untimeliness ruling is ambiguous at best, and, therefore, Dowe's Second Amended Rule 3.850 Motion was properly filed for purposes of section 2244(d)(2). See Sweet, 467 F.3d at 1318; Ousley, 269 F. App'x at 886.

Having found Dowe's Second Amended Rule 3.850 Motion was properly filed, the one-year limitation period was tolled until March 8, 2016, when the First DCA issued its Mandate affirming the circuit court's order. As Dowe filed the instant Petition on February 15, 2016, prior to the First DCA issuing its Mandate, and only 269 days had passed between when Dowe's judgment became final and when he filed his first Rule 3.850 Motion, this action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record

before the Court. Because the Court can "adequately assess [Dowe's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The AEDPA governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

<u>Wilson v. Sellers</u>, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. <u>Id.</u> at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined §

2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[5] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[5] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).
[6] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## A. Ground One

Dowe alleges that the circuit court erred in denying his motion for judgment of acquittal. Doc. 1 at 3-7. Specifically, Dowe contends that the State failed to prove that he had dominion and control over the MDMA. Id. at 3-4. According to Dowe, the State had no evidence he actually possessed the MDMA, so the State had to rely on a constructive possession argument. Id. at 3. As such, Dowe asserts the State had to prove he had dominion and control over the MDMA, knew the MDMA was within his presence, and knew of the illicit nature of the MDMA. Id. Dowe acknowledges the State provided evidence that he knew the nature of the MDMA and knew it was in his presence, but he claims the State provided no evidence that he had dominion and control over the MDMA. Id. at 4. Dowe avers that his "mere proximity to the contraband found in a public place with other people present, is insufficient to sustain a conviction for trafficking in MDMA." Id. at 6-7.

At trial, Dowe's attorney orally moved for a judgment of acquittal after the State rested, Resp. Ex. C at 272-78, and renewed the motion after the defense rested. Id. at 286. Counsel also filed a written motion for judgment of acquittal on March 6, 2009, which the circuit court summarily denied. Resp. Ex. A at 65-70. In denying the motion for judgment of acquittal, the circuit court stated:

> Viewing the evidence in the light most favorable to the State, which I'm required to do at this point, I find there are three operative factors to deny your motion.
>
> Number one, defendant's personal identification was found next to the drugs; two, upon seeing the police, the defendant exited the area, which could be some sort of flight; and three, prior to the officers even mentioning the word

> Ecstasy, that is they arrested him for a drug offense, he made the statement, the Ecstasy is not mine. Having said that, the jury could infer that he had some knowledge that the Ecstasy was, in fact, present and belonged to him.
>
> Therefore, I will deny your motion for judgment of acquittal.

Resp. Ex. C at 278-79. Dowe challenged the denial of his motions for judgment of acquittal on direct appeal as issue one in his initial brief. Resp. Ex. D at 14-19. The First DCA per curiam affirmed the circuit court's denial of the motion for JOA without a written opinion. Resp. Exs. F; G.

To the extent that the First DCA decided the claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Dowe is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, Dowe's claim in Ground One is without merit. In reviewing a motion for JOA, trial courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307,

---

[7] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

319 (1979); see also Gudinas v. State, 693 So. 2d 953, 962 (Fla. 1997) (quoting Taylor v. State, 583 So. 2d 323, 328 (Fla. 1991) (holding a motion for judgment of acquittal should not be granted unless "there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law."). Under Florida law, in order to prove constructive possession: "'(1) The accused must have dominion and control over the contraband[;] (2) The accused must have knowledge that the contraband is within his presence, and; (3) The accused must have knowledge of the illicit nature of the contraband.'" Robinson v. State, 936 So. 2d 1164, 1166 (Fla. 1st DCA 2006) (quoting Wale v. State, 397 So. 2d 738, 739 (Fla. 4th DCA 1981)). As to the first element, "[w]hether a defendant had dominion and control over contraband is generally a fact issue for the jury, but a judgment of acquittal is proper when there is no evidence from which dominion and control can be inferred." Basulto-Rodriguez v. State, 95 So. 3d 403, 406 (Fla. 3d DCA 2012) (citing Campbell v. State, 577 So. 2d 932, 935 (Fla. 1991)). In cases where only circumstantial evidence of dominion and control exists, "the State is not required to rebut conclusively every possible variation of events that could be inferred from the evidence, but only to introduce competent evidence that is inconsistent with the defendant's theory of events." Id. A critical consideration in determining whether a defendant had the ability to exercise dominion and control over the contraband is a tie between the contraband and the defendant. Hudson v. State, 198 So. 3d 935, 939 (Fla. 4th DCA 2016).

At trial the State presented evidence that Officers Bradley Langley and James Jones observed two men, one of which was Dowe, standing in front of an apartment complex's stairwell. Resp. Ex. C at 186-87, 224-25. Upon seeing the officers, the two men

hurriedly retreated to the back of the stairwell where there was no place to go other than inside two apartments. Id. at 187, 225, 233-34. Noting this suspicious behavior, the officers decided to investigate and make contact with the individuals, at which point Dowe went inside one of the apartments near the back of the stairwell. Id. at 188, 207-08, 225-26. As the officers neared the stairwell they smelled the odor of burnt marijuana and observed several items, inches apart from each other, on top of one of the steps near where the individuals had been standing. Id. at 192-93, 196, 225-226. Among the items they found were a hollowed-out book that contained two plastic baggies wrapped with aluminum foil containing MDMA, along with Dowe's Florida identification card, driver's license, passport, and birth certificate. Id. After discovering the MDMA, the officers knocked on the door they saw Dowe enter and arrested Dowe after he came out of the apartment. Id. at 198-200, 227-288. Dowe made a statement to the officers that the MDMA was not his and that "he wouldn't deal with that kind of stuff;" however, the officers had never mentioned that they discovered MDMA prior to Dowe making that statement. Id. at 201, 230-31. Notably, Officer Jones testified that when he first observed the two men, Dowe was closer to the evidence than the other man. Id. at 244.

Based on this evidence, the Court finds there was a causal link between the contraband and Dowe such that a rational trier of fact could have determined Dowe exercised dominion and control over the MDMA. The officers observed that Dowe was closer to the contraband than the other individual, his four forms of identification were within inches of the MDMA, and his incriminating statements to the officers demonstrate he knew what was inside the hollowed-out book. See Hudson, 198 So. 3d at 939. Moreover, the fact that the book was modified in such a way to act as a secret container

and Dowe knew about the contents inside the book, demonstrate a level of dominion of control sufficient to infer constructive possession through circumstantial evidence. All of these facts, when viewed in a light most favorable to the State, constitute competent evidence inconsistent with Dowe's theory that the other individual could have been the dealer. See Basulto-Rodriguez, 95 So. 3d at 406. Thus, this issue was a matter for the jury to resolve. See id. As such, the circuit court did not err in denying Dowe's motion for JOA. Accordingly, the relief sought in Ground One is due to be denied.

### B. Ground Two

Dowe contends that the circuit court erred when it did not allow him to use a peremptory strike on Jason Matricardi during jury selection. Doc. 1 at 7-9. According to Dowe, when his counsel attempted to use a peremptory strike on Matricardi, the State objected and asked the circuit court to require Dowe to give a race-neutral reason for using that strike. Id. at 8. Dowe maintains counsel's answers that Matricardi "was giving [Dowe] bad looks," Id. at 8, and Matricardi's job working on aircraft systems in the Navy "was [not] compatible with the way the defense was going to argue its case, [were], in fact, race-neutral." Id. at 9. Dowe further claims that the next juror up would have been white; therefore, this was not a situation where Dowe was trying to get a juror of a different race. Id. Additionally, Dowe argues that his equal protection rights were violated where "members of his race [had] been purposely excluded." Id.

Respondents assert that the claim raised in Ground Two is procedurally defaulted because Dowe failed to fairly present the federal nature of this claim to the state court. Doc. 10 at 33-35. Respondents claim that Dowe alleges a federal equal protection claim

for the first time in the instant Petition. Id. at 33-34. Alternatively, they contend this claim is without merit. Id. at 36-40.

At the conclusion of jury selection, Dowe sought to use a peremptory strike on Matricardi, at which point the State requested a race-neutral reason for the strike. Resp. Ex. B at 148-49. Defense counsel stated that Dowe did not "like the looks that [Matricardi] was giving him during the jury selection." Id. at 149. After the circuit court questioned whether this could constitute a race-neutral reason, especially when it was not reflected in the record, defense counsel argued in the alternative that the technical knowledge Matricardi had from his job with the Navy would not "be a good match" for their defense theory. Id. at 150. The circuit court then concluded Dowe had failed to articulate a race-neutral reason and disallowed the strike. Id.

Dowe raised this issue on direct appeal. Resp. Ex. D at 20-23. However, when briefing this issue, Dowe did not state or suggest that it was a federal claim concerning equal protection or any other federal constitutional guarantee. Id. Instead, Dowe argued, in terms of state law only, that the circuit court erred in not allowing him to use a peremptory strike on Matricardi. Id. (citing Ratliff v. State, 666 So. 2d 1008 (Fla. 1st DCA 1996); Nunez v. State, 664 So. 2d 1109 (Fla. 3d DCA 1995); State v. Neil, 457 So. 2d 481 (Fla. 1984); and McClain v. State, 596 So. 2d 800 (Fla. 1st DCA 1992)). As such, the claim in Ground Two is unexhausted and procedurally defaulted, and Dowe has failed to show cause or prejudice to excuse this procedural default. See Baldwin, 541 U.S. at 29. Likewise, Dowe has failed to establish a miscarriage of justice would occur if the Court did not consider the merits of this claim.

Nevertheless, even if this claim was not procedurally defaulted, the claim in Ground Two is without merit. A defendant's discriminatory exercise of a peremptory challenge violates the Equal Protection Clause. Georgia v. McCollum, 505 U.S. 42, 59 (1992). "Accordingly, if the State demonstrates a prima facie case of racial discrimination by the defendants, the defendants must articulate a racially neutral explanation for peremptory challenges." Id. A party's previous strikes against certain jurors of one race in the same venire can form the basis of a prima facie case of racial discrimination. Batson v. Kentucky, 476 U.S. 79, 97 (1986). "[W]here the explanation for a peremptory challenge is based on a prospective juror's demeanor, the judge should take into account, among other things, any observations of the juror that the judge was able to make during the voir dire." Thaler v. Haynes, 559 U.S. 43, 48 (2010). Additionally, "vague explanations will be insufficient to refute a prima facie case of racial discrimination." Bui v. Haley, 321 F.3d 1304, 1316 (11th Cir. 2003).

Here, the State requested a race neutral reason for Dowe's peremptory challenge of Matricardi due to the fact Dowe's previous two peremptory strikes were white jurors. Resp. Ex. B at 149. Accordingly, to the extent Dowe now complains that the State failed to establish a prima facie case of racial discrimination, his argument fails because such can be inferred from Dowe's previous pattern of strikes. See Batson, 476 U.S. at 97. Dowe has failed to offer any evidence to rebut the circuit court's finding of fact on this issue; therefore, the Court presumes the State established a prima facie case of racial discrimination. See 28 U.S.C. § 2254(e)(1). As such, the burden shifted to Dowe to give a race-neutral explanation. See McCollum, 505 U.S. at 59.

The circuit court found Dowe's first explanation, that they had a "feeling" about Matricardi due to looks he was allegedly giving Dowe, insufficient because no one else observed the alleged behavior and it was not put on the record. Resp. Ex. B at 149-50. The Court concludes the circuit court's finding here is not contrary to clearly established federal law. See Thaler, 559 U.S. at 48. Likewise, the circuit court's conclusion that Dowe's alternative race-neutral reason was insufficient is also not contrary to clearly established federal law because it was a vague reason. See Bui, 321 F.3d at 1316. Counsel's explanation of how Matricardi's work experience, which he had trouble even remembering, was not a "good match" with the defense theory, without more explanation, was insufficient as a race-neutral reason. See Id. Moreover, Dowe has presented no evidence to rebut the circuit court's factual finding as to these issues. See 28 U.S.C. § 2254(e)(1). Therefore, the circuit court did not err in concluding that Dowe failed to demonstrate a sufficient race-neutral reason for exercising a peremptory challenge on Matricardi. Accordingly, the claim raised in Ground Two is due to be denied.

### C. Ground Three

As Ground Three, Dowe maintains that the circuit court lacked subject matter jurisdiction to enter a verdict against him because the jury did not make a factual finding concerning the weight of the MDMA. Doc. 1 at 10-11. According to Dowe, the jury convicted him of simple possession and, absent a special interrogatory on the verdict form regarding the amount of the MDMA recovered, the circuit court could not have reclassified this charge to a trafficking charge. Id.

Respondents contend this claim is procedurally defaulted. Doc. 10 at 41-42. Although Dowe raised this claim in his Second Amended Rule 3.850 Motion,

Respondents assert that the circuit court ruled the Second Amended Rule 3.850 Motion was untimely. Id. Respondents argue that the claim is procedurally defaulted under federal law because the state court imposed a procedural bar under state law that is firmly established and consistently followed. Id.

For the reasons the Court explained in its analysis of the timeliness of the instant Petition, the Court finds the circuit court did not dismiss Dowe's Second Amended Rule 3.850 Motion as untimely. Instead, the circuit court determined an exception to the time limit applied and addressed the merits of this claim. Resp. Ex. H at 28-30. As Dowe appealed, see Resp. Exs. T; S, and availed himself of one full round of the state's appellate process, the Court concludes Dowe exhausted the claim raised in Ground Three. See Boerckel, 526 U.S. at 845.

In denying relief on this claim, the circuit court stated:

> Initially, this Court notes the Apprendi[8] Court held "[o]ther than the fact of a prior conviction, any fact that **increases** the penalty for a crime **beyond the prescribed statutory maximum** must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added). Here, Apprendi is inapplicable to Defendant's case. Specifically, Defendant did not receive an increased penalty or sentence beyond the statutory maximum. Since Trafficking in MDMA is a first-degree felony, the statutory maximum sentence Defendant could have received was thirty years of incarceration. See § 893.135(l)(k)1a, Fla. Stat. (2008) (stating Trafficking in MDMA [is a] first-degree felony); § 775.082(1)(b)1, Fla. Stat. (2008) (stating punishment for a first-degree felony "by a term of imprisonment not exceeding 30 years . . . "). Defendant received an aggregate sentence of only twelve years of incarceration.
>
> Assuming *arguendo* Defendant takes issue with the three-year mandatory minimum he received, in that the jury's

---

[8] Apprendi v. New Jersey, 530 U.S. 466 (2000).

verdict form does not specify the weight of the MDMA, such an argument also fails. The Amended Information indicates the State charged Defendant with violating section 893.135(1)(k)2a. It alleged Defendant trafficked in "10 grams or more but less than 200 grams" of MDMA. The relevant statute reads:

> (k) 1. A person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 10 grams or more of any of the following substances described in s. 893.03(1)(c):
>
> a. 3,4-Methylendedioxymethamphetamine (MDMA);
>
> . . .
>
> Individually or analogs thereto or isomers thereto or in any combination of or any mixture containing any substance listed in sub-subparagraphs a.-r., commits a felony of the first degree, which felony shall be known as "trafficking in Phenethylamines," punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
>
> 2. If the quantity involved:
>
> a. Is 10 grams or more, but less than 200 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of 3 years and shall be ordered to pay a fine of $50,000.

§ 893.135(1)(k)1a, 2a, Fla. Stat. (2008).

This Court notes the instructions the trial court provided the jurors specifies the weight of MDMA in which Defendant was accused of trafficking. The instruction for Trafficking in Illegal Drugs specifies the third element as follows: "The quantity of the substance involved was 10 grams or more." Upon review, the instructions the jurors received for Trafficking in MDMA are the standard jury instructions for trafficking in controlled substances, approved by the Florida Supreme Court. <u>See</u> Fla. Std. Jury Instr. (Crim.) 25.11 (2008). As such, through the instructions the jury received, the jurors were apprised that, to find Defendant guilty of Trafficking in MDMA as listed on the verdict form, they were also required to find the weight of the MDMA involved was "10 grams or more." Thus, with the jury's finding on its verdict form, the trial court "had a nondiscretionary duty . . . to impose the three-year mandatory minimum sentence" pursuant to section 893.135(1)(k)(2), Florida Statutes. <u>See</u> <u>State v. Strazdins</u>, 890 So. 2d 334, 335 (Fla. 4th DCA 2004).

In viewing the foregoing, the record shows the crime the State charged Defendant with is the same crime in which the jurors found Defendant guilty. Therefore, this Court finds the trial court did, in fact, have subject-matter jurisdiction over Defendant, such to adjudicate him guilty and sentence him. Because Defendant's instant claim lacks merit, it is denied.

Resp. Ex. H at 29-30 (record citations omitted). Dowe appealed and the First DCA per curiam affirmed the circuit court's denial without a written opinion. Resp. Exs. T; S.

To the extent that the First DCA decided the claim on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

---

[9] In accordance with <u>Wilson</u>, the Court presumes that the appellate court adopted the "relevant reasoning" of the circuit court. <u>Wilson</u>, 138 S. Ct. at 1194.

the evidence presented in the state court proceedings. Thus, Dowe is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of the claim is not entitled to deference, the claim in Ground Three is without merit. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." Apprendi, 530 U.S. at 490. Pursuant to section 893.135(1)(k)1a, Florida Statutes (2008), "[a]ny person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of 10 grams or more of . . . 3,4-Methylenedioxymethamphetamine (MDMA) . . . commits a felony of the first degree," which is punishable up to thirty years in prison pursuant to section § 775.082(1)(b)1, Florida Statutes (2008). Additionally, "[i]f the quantity involved is 10 grams or more but less than 200 grams, such person shall be sentenced to a mandatory minimum term of imprisonment of 3 years . . ." § 893.135(1)(k)2a, Fla. Stat. (2008).

The Court initially notes that contrary to Dowe's contention in the Petition, the jury specifically convicted Dowe of Trafficking in MDMA, the same offense for which the State charged him. Resp. Ex. A at 21-22, 71. Additionally, at trial, the State provided unrebutted evidence that the MDMA weighed over ten grams. Resp. Ex. C at 268-72. The weight of the MDMA is an essential element of trafficking in MDMA. See § 893.135(1)(k)1a, Fla. Stat. ("10 grams or more" of MDMA). As such, the maximum punishment prescribed for trafficking does not change based on the weight. Instead, if the State failed to prove Dowe possessed ten grams or more of MDMA, then Dowe would simply be found not guilty of trafficking in MDMA. Therefore, the dictates of Apprendi would not apply because the

statutory maximum for trafficking does not change based on the weight. See Apprendi, 530 U.S. at 490. Moreover, the circuit court sentenced Dowe to ten years in prison, twenty years less than the statutory maximum. As such, Apprendi is inapplicable. See United States v. Gerrow, 232 F.3d 831, 834 (11th Cir. 2000) (holding "there is no error, plain or otherwise, under Apprendi where the term of imprisonment is within the statutory maximum set forth in § 841(b)(1)(C) for a cocaine offense without regard to drug quantity."). Accordingly, the circuit court had subject matter jurisdiction to impose a sentence because the jury convicted Dowe as charged. Therefore, the relief sought in Ground Three is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Dowe seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Dowe "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484.

However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Dowe appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of November, 2018.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8
C:      Keemo Dowe
        Anne Conley, Esq.

28